**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**
**CENTRAL DIVISION**

CIVIL ACTION NO:

| | |
|---|---|
| ARY L. ASSUNCAO, Individually and as | ) |
| Personal Representative of the | ) |
| ESTATE OF MARLENE MIRANDA, | ) |
|                                 Plaintiff, | ) |
| v. | ) |
| | ) |
| LEONARD MORSE HOSPITAL, | ) |
| UMASS MEMORIAL MEDICAL CENTER, INC., | ) |
| JANET MAGNANI, M.D., | ) |
| JEANINE WARD, M.D., | ) |
| JOHN P. HARAN, JR., M.D., and | ) |
| ULISES TORRES CORDERO, M.D., | ) |
|                                 Defendants. | ) |

**PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL**

**NATURE OF THE CLAIM**

This is an action brought by ARY ASSUNCAO, Individually and as Personal Representative of the ESTATE OF MARLENE MIRANDA, for monetary damages as a result of the wrongful death of his wife, Marlene Miranda, proximately caused by the negligence of the Defendants, LEONARD MORSE HOSPITAL, UMASS MEMORIAL MEDICAL CENTER, INC., JANET MAGNANI, M.D., JEANINE WARD, M.D., JOHN P. HARAN, JR., M.D., and ULISES TORRES CORDERO, M.D. in their departure from ordinary prudent care, and in violation of 42 U.S.C. §1395, the Emergency Medical Treatment and Active Labor Act ("EMTALA").

**PARTIES**

1.      The Plaintiff, ARY ASSUNCAO ("Plaintiff" or "Mr. Assuncao"), as Personal Representative of the Estate of Marlene Miranda, is the legal representative of the Estate of

Marlene Miranda.  Such Estate was probated in the Commonwealth of Massachusetts, at the Worcester County Probate Court, Docket Number: W013P3068EA and represents the causes of action which inure to the heirs of the late Marlene Miranda. Mr. Assuncao, individually, is over the age of eighteen and is a citizen of the Commonwealth of Massachusetts residing in Milford, Worcester County, Massachusetts.

2.      Plaintiff's Decedent, MARLENE MIRANDA ("Ms. Miranda" or "Plaintiff's Decedent") was Mr. Assuncao's wife and resided with him in Milford, Worcester County, Massachusetts at all times relevant hereto.

3.      The Defendant, LEONARD MORSE HOSPITAL ("Defendant Leonard Morse") is a medical facility licensed in the Commonwealth of Massachusetts to treat patients, with a principal place of business at 67 Union Street, Natick, Middlesex County, Massachusetts.

4.      The Defendant, UMASS MEMORIAL MEDICAL CENTER, INC. ("Defendant UMass Memorial") is a medical facility licensed in the Commonwealth of Massachusetts to treat patients, with a principal place of business at 55 Lake Avenue North, Worcester, Worcester County, Massachusetts.

5.      The Defendant, JANET MAGNANI, M.D. ("Defendant Dr. Magnani") is a physician licensed to practice in the Commonwealth of Massachusetts.  At all times relevant hereto, she was employed by Defendant Leonard Morse, with a principal place of business at 67 Union Street, Natick, Middlesex County, Massachusetts.

6.      The Defendant, JEANINE WARD, M.D. ("Defendant Dr. Ward") is a physician licensed to practice in the Commonwealth of Massachusetts.  At all times relevant hereto, she was employed by Defendant UMass Memorial, with a principal place of business at 55 Lake Avenue North, Worcester, Worcester County, Massachusetts.

7.      The Defendant, JOHN P. HARAN, M.D. ("Defendant Dr. Haran") is a physician licensed to practice in the Commonwealth of Massachusetts.  At all times relevant hereto, he was employed by Defendant UMass Memorial, with a principal place of business at 55 Lake Avenue North, Worcester, Worcester County, Massachusetts.

8.      The Defendant, ULISES TORRES CORDERO, M.D. ("Dr. Torres Cordero") is a physician licensed to practice in the Commonwealth of Massachusetts.  At all times relevant hereto, he was employed by Defendant UMass Memorial, with a principal place of business at 55 Lake Avenue North, Worcester, Worcester County, Massachusetts.

## JURISDICTION

9.      The Court's jurisdiction over this action is based upon the following:

   a.      28 U.S.C. § 1331: Raises a federal question, particularly the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. §1395; and

   b.      28 U.S.C. § 1367(a): Supplemental jurisdiction over the remaining state claims which arise out of a common nucleus of operative facts.

## FACTUAL ALLEGATIONS

10.     In July of 2013, Ms. Miranda was a 47-year-old woman with a history of thalassemia, a congenital blood condition that causes anemia.

11.     On July 24, 2013, Ms. Miranda slipped and fell down several stairs.  She presented to the Emergency Department at Defendant Leonard Morse with complaints of back injury, specifically to the right posterior ribs.

12.     Examination revealed tenderness of the right posterior ribs and decreased back range of motion due to pain.

13.     An x-ray of her chest and ribs revealed fractures of the right posterior seventh, eighth, ninth, and tenth ribs, and a second fracture to the ninth rib in the lateral aspect, along with a small right-sided pneumothorax and a small right pleural fluid collection.  In the setting of trauma, this pleural fluid collection likely represented a hemothorax.

14.     No other imaging or laboratory testing was performed.  Ms. Miranda was treated for pain with Toradol, morphine, and Lidoderm patch.

15.     The emergency physician, Defendant Dr. Magnani, discussed findings of four rib fractures and pneumothorax with Dr. Laguarda, an internist and pulmonologist.  Dr. Laguarda advised that Ms. Miranda could be discharged home with Lidoderm patches and follow up with a repeat expiration chest x-ray in one day.

16.     Ms. Miranda was then discharged home to self-care with impression: multiple rib fractures – small right pneumothorax.  Prescriptions were given for Percocet, Motrin, and Lidoderm patches.  She was instruct to follow up with Defendant Dr. Seibel and Dr. Laguarda for "follow up evaluation if symptoms are not improving."

17.     Upon discharge, Ms. Miranda went to CVS to get her prescriptions filled.  She was informed that due to her health insurance, the Lidoderm patches would cost $300.00.  She filled all of the prescriptions except the Lidoderm Patches.

18.     Ms. Miranda followed up as instructed for posterior/anterior (PA) and lateral chest x-rays on July 25, 2013 at Defendant Leonard Morse at approximately 11:43 a.m.  The film showed persistent right-sided pneumothorax and the "known right-sided rib fractures," along with new "likely bibasilar atelectasis – small pleural effusion cannot be excluded."  This again likely represented a hemothorax.

19.     The results were sent to Dr. Laguarda, and Ms. Miranda was informed that her condition was worse and she was instructed to go immediately to Dr. Laguarda's office in the same hospital.

20.     When Ms. Miranda arrived at Dr. Laguarda's office, she was told that he would not see her because his office did not take her insurance and she would have to pay more than $500.00 for that visit.

21.     No offer was made at that office to have her reevaluated in the Emergency Department and Ms. Miranda left Defendant Leonard Morse without treatment.

22.     At approximately 1:20 p.m. on July 25, 2013, Ms. Miranda presented to Defendant Edward Kennedy Center in Framingham with complaints of 10/10 pain, with new onset pain in her right shoulder and neck, and sought help with her medications and in finding a pulmonologist with whom to follow up.

23.     She was sent from Defendant Edward Kennedy Center to Defendant UMass Memorial for further emergency department evaluation and treatment.

24.     Dr. Davis, a pulmonologist at Saint Vincent Hospital, was contacted and agreed to see Ms. Miranda the next day, after her ED evaluation at Defendant UMass Memorial.

25.     Ms. Miranda presented at Defendant UMass Memorial's Memorial Campus ("Memorial Campus") on July 25, 2013 at approximately 5:08 p.m. with complaints of shortness of breath and right rib pain.

26.     At 5:30 p.m., a physician evaluation included the history of the fall and pneumothorax with rib fractures with complaints of shortness of breath and chest pain, but did not include Ms. Miranda's history of thalassemia, and indicated normal lung and abdomen examinations.

27. A chest x-ray taken at approximately 6:30 p.m. showed an approximately 20% hemopneumothorax, with non-displaced fractures of the right 7th, 8th, and 9th ribs.

28. At about 7:30 p.m., Ms. Miranda was evaluated by surgery. The surgeon recommended there be no transfer to Defendant UMass Memorial's University Campus ("University Campus") and recommended pain control and repeat chest x-ray in six hours. The surgeon also recommended that if Ms. Miranda was not worse, her pain had improved, and she was not tachypneic, then she would be stable for discharge home with pain medications, Lidocaine Patch, and referral for trauma consult.

29. Defendant Dr. Ward, the emergency department attending physician, agreed with the surgeon's recommendation.

30. A FAST scan performed by Maurine Williams, M.D. ("Dr. Williams") was positive for pneumothorax and negative for intraperitoneal free fluid, free fluid in the chest cavity, or pericardial fluid.

31. A chest CT scan at approximately 9:20 p.m. showed a small right hemo/pneumothorax and multiple right rib fractures. Also noted were fractures of the thoracic 7th, 8th, and 9th right spinal transverse processes and bilateral gravity-dependent atelectasis. Limited evaluation of the upper abdomen demonstrated no gross abnormality. The spinal fractures were not noted on the prior imaging studies.

32. At approximately 12:30 a.m. on July 26, 2013, a bruise was noted on Ms. Miranda's right rib area with subcutaneous crepitus felt. Defendant Dr. Ward was made aware of these findings and evaluated Ms. Miranda again at approximately 1:00 a.m. Defendant Dr. Ward documented that a repeat 6-hour chest x-ray showed a stable pneumothorax with atelectasis vs. opacity.

33.     At 10:00 a.m., Ms. Miranda became pale and diaphoretic and the surgical team evaluated her.  The decision was made to transfer Ms. Miranda to University Campus for further treatment.

34.     At approximately 3:30 p.m., the trauma attending at University Campus, Defendant Dr. Torres Cordero, noted that Ms. Miranda was "stable but pale and dyspneic."  He determined that she "needs immediate pain control, chest tube placement, and maybe epidural, PCA."

35.     At approximately 3:32 p.m., Ms. Miranda's hemoglobin and hematocrit ("H/H") was documented as 8.6/27.1.

36.      At 6:50 p.m., Ms. Miranda was in shock, her vital signs were documented as blood pressure 69/33, with tachycardia 120-140s, a respiratory rate of 16, and O2 saturation of 98%.  She was diaphoretic.

37.     At 6:55 p.m., Ms. Miranda's vital signs still indicated that she was in shock and she remained hypotensive.  Defendant Dr. Haran was at bedside to assess the patient.

38.     An EKG was done and a second IV access was obtained and 2L of normal saline was run with pressure bag wide open.  Ms. Miranda remained diaphoretic with blood pressure fluctuating 50-70s.  She was placed on a non-rebreather oxygen mask.

39.     At 7:07 p.m., Dr. Williams placed a chest tube.  Normal saline was run with IV wide open and resulted in a slight increase in blood pressure.  However, Ms. Miranda remained tachycardic but was noted to be mentating.

40.     At 7:10 p.m., Ms. Miranda's vital signs remained concerning at 85/31, 118, 18, and 98%.

41.     At 7:13 p.m. - almost 4 hours after Dr. Torres Cordero noted that she needed to have a chest tube placed immediately - her chest tube was finally inserted and placed to suction.

Ms. Miranda's oxygen saturation had decreased to 82-87% on a non-rebreather mask.  The chest tube output was documented at 1200 mL at this time.

42.     At 7:15 p.m., Ms. Miranda's vital signs were 91/59, 125, 18, and 96%.  She remained hypotensive.

43.     At 7:20 p.m., IV antibiotics were started with fluids wide open.  Ms. Miranda continued to have an oxygen saturation of 100%, although she remained tachycardic on non-rebreather.  Dr. Williams was still at the bedside suturing the chest tube in place.

44.     Vital signs at 7:30 p.m. were 90/39, 118, 20, and 98%.  A portable x-ray completed at 7:30 p.m. showed the thoracostomy (chest) tube with decreased pneumothorax, improved aeration, and "the hemothorax is grossly unchanged compared to prior study."  Output chest tube was 1400 mL and bloody.  She remained on the non-rebreather mask.

45.     At 7:45 p.m., Ms. Miranda was deteriorating.  Her blood pressure was fluctuating in the 60s-70s, and she was tachycardic in the 130s-140s.

46.     At 7:51 p.m., results from Ms. Miranda's H/H were returned and noted to be 5.9/19.0, which was significantly lower than the prior H/H taken at approximately 3:32 p.m.

47.     At 8:00 p.m., jugular venous distention was noted in Ms. Miranda's neck as well as an increase in her tachycardia and a decrease in her ability to mentate.

48.     By 8:17 p.m., central line access was obtained and patient mentation continued to fail.

49.     An arterial line was placed at 8:25 p.m., with her blood pressure fluctuating.

50.     At 8:35 p.m., Ms. Miranda required intubation as she was noted to have decreased breath sounds, poor mentation, and her arterial line pressure was fluctuating.  She was given Etomidate 20mg IV and Succinylcholine 100mg IV and intubation as initiated.

51.     A resident was allowed to attempt intubation first and said attempt was unsuccessful.  During these attempts at intubation, Ms. Miranda's saturations decreased to 55%, she remained tachycardic, and her blood pressure fluctuated.

52.     A chest x-ray showed increased size in the "moderate to large right pleural effusion" at 8:36 p.m., which was concerning given the chest tube output.

53.     At 8:40 p.m., a Thoracic Surgery consult was initiated for assistance in the operating room due to an "expanding hemopneumothorax which is causing hemodynamic instability."  In response to the critical H/H that was confirmed verbally, a massive transfusion of uncrossed blood was initiated, hung wide open.

54.     At 8:57 p.m., Ms. Miranda became bradycardic with an idioventricular rhythm on the monitor.  Her vital signs at 9:08 p.m. were 62/33, 49, and 100%.  A Code was initiated using standard ACLS protocols.  A needle decompression was performed with bloody return.

55.     At 9:11 p.m., chest compressions were initiated and a surgeon placed a second chest tube.

56.     At 9:14 p.m., a LifePac monitor was applied to Ms. Miranda's chest and she was prepared for transport to the operating room.  CPR continued in transit to the operating room with the trauma team.  They were accompanied by respiratory therapy, who was bagging the patient. Dopamine was wide open.

57.     July 26, 2013, Ms. Miranda underwent right thoracotomy, evacuation of hematoma and primary closure, two wedge resections, exploratory laparotomy revealing diaphragm lacerations and a liver laceration, primary repair of liver laceration, and NPWT placement to abdomen.

58.     Ms. Miranda suffered cardiac arrest twice prior to surgery the evening of July 26, 2013.

59.     After that surgery, she "failed to appropriately awaken" from anesthesia.

60.     There were subsequent operative procedures on July 27, 2013 and July 28, 2013.

61.     A head CT on the morning of July 31, 2013 showed changes consistent with anoxic brain injury, including global edema and multiple areas of ischemic strokes in "borderzone" areas.

62.     Ms. Miranda had also developed acute renal failure (ARF) and acute tubular necrosis (ATN), both consistent with effects of shock on the kidneys.

63.     Ms. Miranda's "significant severe cortical global ischemia and areas of borderzone strokes" was ascribed to "hypoperfusion likely during cardiac arrest," and her intercostal arterial injury, multiple diaphragmatic injuries, and liver laceration were ascribed to chest compressions, implying that the pulmonary injuries requiring right upper extremity and right lower lobe wedge resections were caused by the rib fractures and the fall, with the other injuries caused by chest compressions in the presence of the rib fractures.

64.     An attempt was made to update her PCP of record, Defendant Dr. Seibel, at the Family Health Center of Worcester, and the caller from Defendant UMass Memorial was told that Defendant Dr. Seibel had left the practice a year ago and there were no records in the system "about this patient."

65.     On August 3, 3013, an order for no CPR or ACLS was signed by Dr. Hall. Thereafter, Ms. Miranda was determined to meet the criteria for brain death.

66.     Ms. Miranda died on August 6, 2013 at 7:00 p.m.  The death certificate listed "blunt trauma to torso" as the cause of death.

**COUNT I: VIOLATION OF 42 U.S.C. § 1395,**
**THE EMERGENCY MEDICAL TREATMENT AND ACTIVE LABOR ACT**
**ARY ASSUNCAO AS PERSONAL REPRESENTATIVE OF THE**
**ESTATE OF MARLENE MIRANDA v. LEONARD MORSE HOSPITAL**

67.     The Plaintiff repeats and re-alleges the allegations contained in Paragraphs 1 - 66 of this Complaint, and incorporates them herein by reference.

68.     On July 24, 2013 and July 25, 2013, Defendant Leonard Morse was a participating hospital in the Federal Medicare Program and had a provider agreement with the Secretary of Health and Human Services, pursuant to 42 U.S.C. §1395cc.

69.     On or about July 24, 2013, Defendant Leonard Morse operated an Emergency Department where patients routinely presented for evaluation and management of emergent symptoms, and at all times relevant hereto held itself out to the public as such.

70.     On or about July 24, 2013, Ms. Miranda relied on said representation, presented to Defendant Leonard Morse's Emergency Department requesting evaluation and treatment to determine whether or not Ms. Miranda had an emergency medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in:

  a.     Placing Ms. Miranda's health in serious jeopardy;

  b.     Serious impairment to bodily functions;

  c.     Serious dysfunction of any bodily organ or part; or

  d.     Pose a threat to her health or safety.

71.     Ms. Miranda was admitted for evaluation to Defendant Leonard Morse's Emergency Department and the hospital undertook to treat Ms. Miranda relevant to her complaints of back injury, specifically to the right posterior ribs.

72.     Examination revealed tenderness of the right posterior ribs and decreased back range of motion due to pain.  An x-ray of her chest and ribs revealed fractures of the right posterior seventh, eighth, ninth, and tenth ribs, and a second fracture of the ninth rib in the lateral aspect, along with a small right-sided pneumothorax and a small right pleural fluid collection.  In the setting of trauma, this pleural fluid collection likely represented a hemothorax.  No other imaging or laboratory testing was performed.

73.     On or about July 24, 2013, Ms. Miranda was discharged home to self-care with Lidoderm patches and follow up with repeat expiration chest x-ray in one day.

74.     Ms. Miranda followed up as instructed for a PA and lateral chest x-ray on July 25, 2013 at Leonard Morse at approximately 11:43 a.m.

75.     The film showed persistent right-sided pneumothorax and the "known right-sided rib fractures," along with new "likely bibasilar atelectasis – small pleural effusion cannot be excluded."  This again likely represented a hemothorax.

76.     The results were sent to Dr. Laguarda, and, after her chest film, Ms. Miranda was informed that her condition was worse and she was instructed to go immediately to Dr. Laguarda's office in the same hospital.

77.     When Ms. Miranda arrived at Dr. Laguarda's office, she was told that he would not see her because his office did not take her insurance and she would have to pay more than $500.00 for that visit.

78.     No offer was made at that office to have her reevaluated in the Emergency Department and Ms. Miranda left Defendant Leonard Morse without treatment.

79.     Defendant Leonard Morse violated 42 U.S.C. § 1395, the Emergency Medical Treatment and Active Labor Act, in the following manner:

a.    Failing to evaluate Ms. Miranda within the capabilities of the facility to determine if an emergency medical condition (other than the diagnosed rib fractures, hemothorax, and pneumothorax) was present;

b.    Discharge ("transfer" home) of a patient with a known and diagnosed emergency medical condition that had not been stabilized (i.e., multiple rib fractures with hemothorax and pneumothorax);

c.    Pending further discovery, there is the potential that these violations of EMTALA were motivated by discriminatory decision-making by the emergency physician, in that the patient was Brazilian, spoke primarily Portuguese, was employed in a traditionally low-wage job as a housekeeper, and had a medical insurance plan, CeltiCare, which was unknown to the provider; and

d.    On July 25, 2013, Ms. Miranda again presented to the Leonard Morse Hospital for further evaluation of her emergency medical condition.  Testing revealed that she was worse and, instead of having Dr. Laguarda come to the Emergency Department or arranging her transport to his office, she was sent within the hospital by herself to be further evaluated in his office.  She was denied an emergency screening examination and evaluation as required by the law due to lack of an accepted insurance plan.  With no other evaluation or care offered, she was sent out from Defendant Leonard Morse.

80.    Despite Ms. Miranda presenting with a recognized emergency medical condition as defined by EMTALA, Defendant Leonard Morse failed to treat and/or stabilize the emergent condition prior to discharge, resulting in the material deterioration to the health of Ms. Miranda and contributing to her ultimate death.

81.     Defendant Leonard Morse failed to provide an emergency medical screening examination and medical treatment within its capabilities either to stabilize Ms. Miranda or to minimize the risk to Ms. Miranda.

82.     The actions of Defendant Leonard Morse were in violation of the requirements of EMTALA, which conduct resulted in the death of Plaintiff's Decedent, Marlene Miranda.

WHEREFORE, the Plaintiff, Ary Assuncao, as Personal Representative of the Estate of Marlene Miranda, demands judgment against the Defendant, Leonard Morse Hospital, in an amount that will adequately compensate him for her pain and suffering, significant medical expenses, disability from normal daily activities, great pain of body and mind, plus costs, interest and reasonable attorney's fees, and such other relief as this Court deems just and proper.

### COUNT II: NEGLIGENCE
### ARY ASSUNCAO AS PERSONAL REPRESENTATIVE OF THE
### ESTATE OF MARLENE MIRANDA v. JANET MAGNANI, M.D.

83.     The Plaintiff repeats and re-alleges the allegations contained in Paragraphs 1 - 82 of this Complaint, and incorporates them herein by reference.

84.     At all times relevant hereto, Defendant Dr. Magnani was a physician at Defendant Leonard Morse, assigned to provide care and treatment to Plaintiff's Decedent.

85.     Defendant Dr. Magnani failed to meet the standard of care of the average emergency physician by:

a.     Failing to properly evaluate Ms. Miranda's injuries, including failure to perform a thorough and detailed history and assessment of her injuries;

b.     Failing to properly evaluate Ms. Miranda's injuries, including failure to perform a proper and detailed physical examination;

14

c.      Failing to perform indicated imaging tests, including imaging of the spine and abdomen;

d.      Failing to perform indicated laboratory tests, including a CBC and urine analysis;

e.      Failing to appreciate that multiple rib fractures (ribs 7, 8, 9 in two places, and 10) with a pneumothorax and "small right pleural fluid collection" (likely a hemothorax) constituted a serious thoracic injury that required further evaluation, treatment, and transfer to a trauma center;

f.      Failing to properly treat Ms. Miranda's injuries, including failure to treat pain;

g.      Failing to place a thoracostomy tube for therapeutic and diagnostic purposes;

h.      Failing to transfer Ms. Miranda to a trauma center for proper care in a safe and efficient manner;

i.      Discharging an unstable patient to home from an emergency department;

j.      Failing to stabilize, within capabilities, Ms. Miranda's injuries prior to transfer; and

k.      Such other acts of negligence and/or malpractice as may be determined through discovery and/or other methods.

86.     Defendant Dr. Magnani's decision to discharge Ms. Miranda to home self-care despite knowing that Ms. Miranda had multiple rib fractures and pneumothorax caused or contributed to Ms. Miranda's death.

WHEREFORE, Plaintiff Ary Assuncao, as Personal Representative of the Estate of Marlene Miranda, demands judgment against Defendant Janet Magnani, M.D., in an amount that will adequately compensate him for her medical expenses, conscious pain and suffering, great pain of body and mind, costs, interest and reasonable attorney's fees as well as such other relief as this Honorable Court deems just and proper.

## COUNT III: WRONGFUL DEATH
## ARY ASSUNCAO AS PERSONAL REPRESENTATIVE OF THE
## ESTATE OF MARLENE MIRANDA v. JANET MAGNANI, M.D.

87.     The Plaintiff repeats and re-alleges the allegations contained in Paragraphs 1 - 86 of this Complaint, and incorporates them herein by reference.

88.     The negligent medical care rendered by Defendant Dr. Magnani caused the wrongful death of Plaintiff's Decedent, Marlene Miranda.

89.     Pursuant to M.G.L. c. 229, § 2, Plaintiff Ary Assuncao, as Personal Representative of the Estate of Marlene Miranda, brings this action for the wrongful death of Marlene Miranda.

WHEREFORE, Plaintiff Ary Assuncao, as Personal Representative of the Estate of Marlene Miranda, demands judgment against Defendant Janet Magnani, M.D. in an amount that will adequately compensate him for her medical expenses, conscious pain and suffering, wrongful death, loss of reasonable expected income, services, protection, care, comfort, society and companionship and costs, interest and reasonable attorney's fees as well as such other relief as this Honorable Court deems just and proper.

**COUNT IV: GROSS NEGLIGENCE**
**ARY ASSUNCAO AS PERSONAL REPRESENTATIVE OF THE**
**ESTATE OF MARLENE MIRANDA v. JANET MAGNANI, M.D.**

90.     The Plaintiff repeats and re-alleges the allegations contained in Paragraphs 1 - 89 of this Complaint, and incorporates them herein by reference.

91.     Defendant Dr. Magnani's actions showed a reckless disregard for Ms. Miranda's wellbeing while she was in her care.

92.     Defendant Dr. Magnani was grossly negligent in the following manner:

        a.      Failing to properly evaluate Ms. Miranda's injuries, including failure to perform a thorough and detailed history and assessment of her injuries;

        b.      Failing to properly evaluate Ms. Miranda's injuries, including failure to perform a proper and detailed physical examination;

        c.      Failing to perform indicated imaging tests, including imaging of the spine and abdomen;

        d.      Failing to perform indicated laboratory tests, including a CBC and urine analysis;

        e.      Failing to appreciate that multiple rib fractures (ribs 7, 8, 9 in two places, and 10) with a pneumothorax and "small right pleural fluid collection" (likely a hemothorax) constituted a serious thoracic injury that required further evaluation, treatment, and transfer to a trauma center;

        f.      Failing to properly treat Ms. Miranda's injuries, including failure to treat pain;

        g.      Failing to place a thoracostomy tube for therapeutic and diagnostic purposes;

h. Failing to transfer Ms. Miranda to a trauma center for proper care in a safe and efficient manner;

i. Discharging an unstable patient to home from an emergency department;

j. Failing to stabilize, within capabilities, Ms. Miranda's injuries prior to transfer; and

k. Such other acts of negligence and/or malpractice as may be determined through discovery and/or other methods.

93. Defendant Dr. Magnani's gross negligence and reckless disregard for Ms. Miranda's wellbeing caused or contributed to her death.

WHEREFORE, Plaintiff Ary Assuncao, as Personal Representative of the Estate of Marlene Miranda, demands judgment against Defendant Janet Magnani, M.D. for punitive damages, as well as costs, interest and reasonable attorney's fees as well as such other relief as this Honorable Court deems just and proper.

### COUNT V: CONSCIOUS PAIN & SUFFERING
### ARY ASSUNCAO AS PERSONAL REPRESENTATIVE OF THE
### ESTATE OF MARLENE MIRANDA v. JANET MAGNANI, M.D.

94. The Plaintiff repeats and re-alleges the allegations contained in Paragraphs 1 - 93 of this Complaint, and incorporates them herein by reference.

95. During the course of Ms. Miranda's care from Defendant Dr. Magnani and in the days prior to her death, Ms. Miranda was conscious, aware, and in pain and suffering.

96. Ms. Miranda's conscious pain and suffering was made evident by her reports of severe pain and the level of pain medication she received.

97. At all times relevant hereto, Ms. Miranda consciously suffered as a direct and proximate result of the negligent care rendered by Defendant Dr. Manani.

WHEREFORE, Plaintiff Ary Assuncao, as Personal Representative of the Estate of Marlene Miranda, demands judgment against Defendant Janet Magnani, M.D. in an amount that will adequately compensate her for his medical expenses, conscious pain and suffering, wrongful death, loss of reasonable expected income, services, protection, care, comfort, society and companionship and costs, interest and reasonable attorney's fees as well as such other relief as this Honorable Court deems just and proper.

**COUNT VI: NEGLIGENCE**
**ARY ASSUNCAO AS PERSONAL REPRESENTATIVE OF THE**
**ESTATE OF MARLENE MIRANDA v. JEANINE WARD, M.D.**

98.     The Plaintiff repeats and re-alleges the allegations contained in Paragraphs 1 - 97 of this Complaint, and incorporates them herein by reference.

99.     At all times relevant hereto, Defendant Dr. Ward was a physician at Defendant UMass Memorial, assigned to provide care and treatment to Plaintiff's Decedent.

100.    Defendant Dr. Ward failed to meet the standard of care of the average physician by:

        a.     Failing to properly evaluate Ms. Miranda's injuries, including failure to perform and document a thorough and detailed history and physical examination, including information gained from transferring providers;

        b.     Failing to properly and timely treat Ms. Miranda's injuries, including failure eto manage her pain;

        c.     Failing to properly and timely treat Ms. Miranda's injuries, including failure to place a thoracostomy tube for diagnostic and therapeutic purposes;

        d.     Failing to transfer Ms. Miranda to a trauma center for proper care in a timely, safe, and efficient manner;

e.      Improperly admitting Ms. Miranda to an observation unit instead of a trauma care unit; and

f.      Such other acts of negligence and/or malpractice as may be determined through discovery and/or other methods.

101.    Defendant Dr. Ward's breaches of the standard of care caused or contributed to Ms. Miranda's death.

WHEREFORE, Plaintiff Ary Assuncao, as Personal Representative of the Estate of Marlene Miranda, demands judgment against Defendant Jeanine Ward, M.D., in an amount that will adequately compensate him for her medical expenses, conscious pain and suffering, great pain of body and mind, costs, interest and reasonable attorney's fees as well as such other relief as this Honorable Court deems just and proper.

## COUNT VII: WRONGFUL DEATH
## ARY ASSUNCAO AS PERSONAL REPRESENTATIVE OF THE
## ESTATE OF MARLENE MIRANDA v. JEANINE WARD, M.D.

102.    The Plaintiff repeats and re-alleges the allegations contained in Paragraphs 1 - 101 of this Complaint, and incorporates them herein by reference.

103.    The negligent medical care rendered by Defendant Dr. Ward caused the wrongful death of Plaintiff's Decedent, Marlene Miranda.

104.    Pursuant to M.G.L. c. 229, § 2, Plaintiff Ary Assuncao, as Personal Representative of the Estate of Marlene Miranda, brings this action for the wrongful death of Marlene Miranda.

WHEREFORE, Plaintiff Ary Assuncao, as Personal Representative of the Estate of Marlene Miranda, demands judgment against Defendant Jeanine Ward, M.D. in an amount that will adequately compensate him for her medical expenses, conscious pain and suffering, wrongful death, loss of reasonable expected income, services, protection, care, comfort, society and

20

companionship and costs, interest and reasonable attorneys fees as well as such other relief as this Honorable Court deems just and proper.

## COUNT VIII: GROSS NEGLIGENCE
### ARY ASSUNCAO AS PERSONAL REPRESENTATIVE OF THE ESTATE OF MARLENE MIRANDA v. JEANINE WARD, M.D.

105.    The Plaintiff repeats and re-alleges the allegations contained in Paragraphs 1 - 104 of this Complaint, and incorporates them herein by reference.

106.    Defendant Dr. Wards actions showed a reckless disregard for Ms. Mirandas wellbeing while she was in her care.

107.    Defendant Dr. Ward was grossly negligent in the following manner:

a.    Failing to properly evaluate Ms. Mirandas injuries, including failure to perform and document a thorough and detailed history and physical examination, including information gained from transferring providers;

b.    Failing to properly and timely treat Ms. Mirandas injuries, including failure to manage her pain;

c.    Failing to properly and timely treat Ms. Mirandas injuries, including failure to place a thoracostomy tube for diagnostic and therapeutic purposes;

d.    Failing to transfer Ms. Miranda to a trauma center for proper care in a timely, safe, and efficient manner;

e.    Improperly admitting Ms. Miranda to an observation unit instead of a trauma care unit; and

f.    Such other acts of negligence and/or malpractice as may be determined through discovery and/or other methods.

108.    Defendant Dr. Ward's gross negligence and reckless disregard for Ms. Miranda's wellbeing caused or contributed to her death.

WHEREFORE, Plaintiff Ary Assuncao, as Personal Representative of the Estate of Marlene Miranda, demands judgment against Defendant Jeanine Ward, M.D. for punitive damages, as well as costs, interest and reasonable attorney's fees as well as such other relief as this Honorable Court deems just and proper.

## COUNT IX: CONSCIOUS PAIN & SUFFERING
## ARY ASSUNCAO AS PERSONAL REPRESENTATIVE OF THE
## ESTATE OF MARLENE MIRANDA v. JEANINE WARD, M.D.

109.    The Plaintiff repeats and re-alleges the allegations contained in Paragraphs 1 – 108 of this Complaint, and incorporates them herein by reference.

110.    During the course of Ms. Miranda's care from Defendant Dr. Ward and in the days prior to her death, Ms. Miranda was conscious, aware, and in pain and suffering.

111.    Ms. Miranda's conscious pain and suffering was made evident by her reports of severe pain and the level of pain medication she received.

112.    At all times relevant hereto, Ms. Miranda consciously suffered as a direct and proximate result of the negligent care rendered by Defendant Dr. Ward.

WHEREFORE, Plaintiff Ary Assuncao, as Personal Representative of the Estate of Marlene Miranda, demands judgment against Defendant Jeanine Ward, M.D. in an amount that will adequately compensate her for his medical expenses, conscious pain and suffering, wrongful death, loss of reasonable expected income, services, protection, care, comfort, society and companionship and costs, interest and reasonable attorney's fees as well as such other relief as this Honorable Court deems just and proper.

## COUNT X: NEGLIGENCE
## ARY ASSUNCAO AS PERSONAL REPRESENTATIVE OF THE
## ESTATE OF MARLENE MIRANDA v. JOHN P. HARAN, M.D.

113.    The Plaintiff repeats and re-alleges the allegations contained in Paragraphs 1 - 112 of this Complaint, and incorporates them herein by reference.

114.    At all times relevant hereto, Defendant Dr. Haran was a physician at Defendant UMass Memorial, assigned to provide care and treatment to Plaintiff's Decedent.

115.    Defendant Dr. Haran failed to meet the standard of care of the average physician by:

       a.    Failing to properly and timely evaluate Ms. Miranda's injuries, including failing to appreciate the worsening nature of her hemothorax, as evidenced by information available shortly after her arrival at the trauma center, including the onset of right shoulder pain, increasing hemothorax on x-ray, dropping hematocrit, worsening hypoxia, and impending shock;

       b.    Failing to properly and timely treat Ms. Miranda's injuries, including failing to manage her pain;

       c.    Failing to properly and timely treat Ms. Miranda's injuries, including negligent delays in placement of a thoracostomy tube, intubation of her airway, resuscitation, and operative management of her injuries;

       d.    Failing to appreciate that an unchanged hemothorax after 1200-1800 mL of blood drained by thoracostomy tube constituted an indication for immediate operative intervention;

       e.    Failing to timely and properly treat Ms. Miranda's injuries, leading to the onset of shock and hypoxia, the need for massive transfusion of blood and blood products,

CPR chest compressions and artificial ventilation, leading to further injuries, including intercostal arterial injury, diaphragmatic injury, liver injury, and brain damage, leading to brain death;

      f.     Failing to secure Ms. Miranda's airway through use of the most experienced and proficient clinician available, leading to hypoxia and brain damage, leading to brain death;

      g.     Failing to properly supervise and advocate for timely, proper, and adequate care through adequate presence of attending physicians from emergency medicine and trauma surgery during emergency department trauma evaluation; and

      h.     Such other acts of negligence and/or malpractice as may be determined through discovery and/or other methods.

116.    Defendant Dr. Haran's breaches of the standard of care caused or contributed to Ms. Miranda's death.

WHEREFORE, Plaintiff Ary Assuncao, as Personal Representative of the Estate of Marlene Miranda, demands judgment against Defendant John P. Haran, M.D., in an amount that will adequately compensate him for her medical expenses, conscious pain and suffering, great pain of body and mind, costs, interest and reasonable attorney's fees as well as such other relief as this Honorable Court deems just and proper.

## COUNT XI: WRONGFUL DEATH
## ARY ASSUNCAO AS PERSONAL REPRESENTATIVE OF THE
## ESTATE OF MARLENE MIRANDA v. JOHN P. HARAN, M.D.

117.    The Plaintiff repeats and re-alleges the allegations contained in Paragraphs 1 - 116 of this Complaint, and incorporates them herein by reference.

118.    The negligent medical care rendered by Defendant Dr. Haran caused the wrongful death of Plaintiff's Decedent, Marlene Miranda.

119.    Pursuant to M.G.L. c. 229, § 2, Plaintiff Ary Assuncao, as Personal Representative of the Estate of Marlene Miranda, brings this action for the wrongful death of Marlene Miranda.

WHEREFORE, Plaintiff Ary Assuncao, as Personal Representative of the Estate of Marlene Miranda, demands judgment against Defendant John P. Haran, M.D. in an amount that will adequately compensate him for her medical expenses, conscious pain and suffering, wrongful death, loss of reasonable expected income, services, protection, care, comfort, society and companionship and costs, interest and reasonable attorney's fees as well as such other relief as this Honorable Court deems just and proper.

## COUNT XII: GROSS NEGLIGENCE
## ARY ASSUNCAO AS PERSONAL REPRESENTATIVE OF THE
## ESTATE OF MARLENE MIRANDA v. JOHN P. HARAN, M.D.

120.    The Plaintiff repeats and re-alleges the allegations contained in Paragraphs 1 - 119 of this Complaint, and incorporates them herein by reference.

121.    Defendant Dr. Haran's actions showed a reckless disregard for Ms. Miranda's wellbeing while she was in his care.

122.    Defendant Dr. Haran was grossly negligent in the following manner:

a.      Failing to properly and timely evaluate Ms. Miranda's injuries, including failing to appreciate the worsening nature of her hemothorax, as evidenced by information

available shortly after her arrival at the trauma center, including the onset of right shoulder pain, increasing hemothorax on x-ray, dropping hematocrit, worsening hypoxia, and impending shock;

b.      Failing to properly and timely treat Ms. Miranda's injuries, including failing to manage her pain;

c.      Failing to properly and timely treat Ms. Miranda's injuries, including negligent delays in placement of a thoracostomy tube, intubation of her airway, resuscitation, and operative management of her injuries;

d.      Failing to appreciate that an unchanged hemothorax after 1200-1800 mL of blood drained by thoracostomy tube constituted an indication for immediate operative intervention;

e.      Failing to timely and properly treat Ms. Miranda's injuries, leading to the onset of shock and hypoxia, the need for massive transfusion of blood and blood products, CPR chest compressions and artificial ventilation, leading to further injuries, including intercostal arterial injury, diaphragmatic injury, liver injury, and brain damage, leading to brain death;

f.      Failing to secure Ms. Miranda's airway through use of the most experienced and proficient clinician available, leading to hypoxia and brain damage, leading to brain death;

g.      Failing to properly supervise and advocate for timely, proper, and adequate care through adequate presence of attending physicians from emergency medicine and trauma surgery during emergency department trauma evaluation; and

      h.      Such other acts of negligence and/or malpractice as may be determined through discovery and/or other methods.

123.     Defendant Dr. Haran's gross negligence and reckless disregard for Ms. Miranda's wellbeing caused or contributed to her death.

WHEREFORE, Plaintiff Ary Assuncao, as Personal Representative of the Estate of Marlene Miranda, demands judgment against Defendant John P. Haran, M.D. for punitive damages, as well as costs, interest and reasonable attorney's fees as well as such other relief as this Honorable Court deems just and proper.

**COUNT XIII: CONSCIOUS PAIN & SUFFERING**
**ARY ASSUNCAO AS PERSONAL REPRESENTATIVE OF THE**
**ESTATE OF MARLENE MIRANDA v. JOHN P. HARAN, M.D.**

124.     The Plaintiff repeats and re-alleges the allegations contained in Paragraphs 1 - 123 of this Complaint, and incorporates them herein by reference.

125.     During the course of Ms. Miranda's care from Defendant Dr. Haran and in the days prior to her death, Ms. Miranda was conscious, aware, and in pain and suffering.

126.     Ms. Miranda's conscious pain and suffering was made evident by her reports of severe pain and the level of pain medication she received.

127.     At all times relevant hereto, Ms. Miranda consciously suffered as a direct and proximate result of the negligent care rendered by Defendant Dr. Haran.

WHEREFORE, Plaintiff Ary Assuncao, as Personal Representative of the Estate of Marlene Miranda, demands judgment against Defendant John P. Haran, M.D. in an amount that will adequately compensate her for his medical expenses, conscious pain and suffering, wrongful death, loss of reasonable expected income, services, protection, care, comfort, society and

companionship and costs, interest and reasonable attorney's fees as well as such other relief as this Honorable Court deems just and proper.

### COUNT XIV: NEGLIGENCE
### ARY ASSUNCAO AS PERSONAL REPRESENTATIVE OF THE
### ESTATE OF MARLENE MIRANDA v. ULISES TORRES CORDERO, M.D.

128.     The Plaintiff repeats and re-alleges the allegations contained in Paragraphs 1 - 127 of this Complaint, and incorporates them herein by reference.

129.     At all times relevant hereto, Defendant Dr. Torres Cordero was a physician at Defendant UMass Memorial, assigned to provide care and treatment to Plaintiff's Decedent.

130.     Defendant Dr. Torres Cordero failed to meet the standard of care of the average physician by:

a.     Failing to properly and timely evaluate Ms. Miranda's injuries, including failing to appreciate the worsening nature of her hemothorax, as evidenced by information available shortly after her arrival at the trauma center, including the onset of right shoulder pain, increasing hemothorax on x-ray, dropping hematocrit, worsening hypoxia, and impending shock;

b.     Failing to properly and timely treat Ms. Miranda's injuries, including failing to manage her pain;

c.     Failing to properly and timely treat Ms. Miranda's injuries, including negligent delays in placement of a thoracostomy tube, intubation of her airway, resuscitation, and operative management of her injuries;

d.     Failing to appreciate that an unchanged hemothorax after 1200-1800 mL of blood drained by thoracostomy tube constituted an indication for immediate operative intervention;

e.      Failing to timely and properly treat Ms. Miranda's injuries, leading to the onset of shock and hypoxia, the need for massive transfusion of blood and blood products, CPR chest compressions and artificial ventilation, leading to further injuries, including intercostal arterial injury, diaphragmatic injury, liver injury, and brain damage, leading to brain death;

f.      Failing to secure Ms. Miranda's airway through use of the most experienced and proficient clinician available, leading to hypoxia and brain damage, leading to brain death;

g.      Failing to properly supervise and advocate for timely, proper, and adequate care through adequate presence of attending physicians from emergency medicine and trauma surgery during emergency department trauma evaluation; and

h.      Such other acts of negligence and/or malpractice as may be determined through discovery and/or other methods.

131.    Defendant Dr. Torres Cordero's breaches of the standard of care caused or contributed to Ms. Miranda's death.

WHEREFORE, Plaintiff Ary Assuncao, as Personal Representative of the Estate of Marlene Miranda, demands judgment against Defendant Ulises Torres Cordero, M.D., in an amount that will adequately compensate him for her medical expenses, conscious pain and suffering, great pain of body and mind, costs, interest and reasonable attorney's fees as well as such other relief as this Honorable Court deems just and proper.

## COUNT XV: WRONGFUL DEATH
## ARY ASSUNCAO AS PERSONAL REPRESENTATIVE OF THE
## ESTATE OF MARLENE MIRANDA v. ULISES TORRES CORDERO, M.D.

132.    The Plaintiff repeats and re-alleges the allegations contained in Paragraphs 1 - 131 of this Complaint, and incorporates them herein by reference.

133.    The negligent medical care rendered by Defendant Dr. Torres Cordero caused the wrongful death of Plaintiff's Decedent, Marlene Miranda.

134.    Pursuant to M.G.L. c. 229, § 2, Plaintiff Ary Assuncao, as Personal Representative of the Estate of Marlene Miranda, brings this action for the wrongful death of Marlene Miranda.

WHEREFORE, Plaintiff Ary Assuncao, as Personal Representative of the Estate of Marlene Miranda, demands judgment against Defendant Ulises Torres Cordero, M.D. in an amount that will adequately compensate him for her medical expenses, conscious pain and suffering, wrongful death, loss of reasonable expected income, services, protection, care, comfort, society and companionship and costs, interest and reasonable attorney's fees as well as such other relief as this Honorable Court deems just and proper.

## COUNT XVI: GROSS NEGLIGENCE
## ARY ASSUNCAO AS PERSONAL REPRESENTATIVE OF THE
## ESTATE OF MARLENE MIRANDA v. ULISES TORRES CORDERO, M.D.

135.    The Plaintiff repeats and re-alleges the allegations contained in Paragraphs 1 - 134 of this Complaint, and incorporates them herein by reference.

136.    Defendant Dr. Torres Cordero's actions showed a reckless disregard for Ms. Miranda's wellbeing while she was in his care.

137.    Defendant Dr. Torres Cordero was grossly negligent in the following manner:

    a.    Failing to properly and timely evaluate Ms. Miranda's injuries, including failing to appreciate the worsening nature of her hemothorax, as evidenced by information

available shortly after her arrival at the trauma center, including the onset of right shoulder pain, increasing hemothorax on x-ray, dropping hematocrit, worsening hypoxia, and impending shock;

b.      Failing to properly and timely treat Ms. Miranda's injuries, including failing to manage her pain;

c.      Failing to properly and timely treat Ms. Miranda's injuries, including negligent delays in placement of a thoracostomy tube, intubation of her airway, resuscitation, and operative management of her injuries;

d.      Failing to appreciate that an unchanged hemothorax after 1200-1800 mL of blood drained by thoracostomy tube constituted an indication for immediate operative intervention;

e.      Failing to timely and properly treat Ms. Miranda's injuries, leading to the onset of shock and hypoxia, the need for massive transfusion of blood and blood products, CPR chest compressions and artificial ventilation, leading to further injuries, including intercostal arterial injury, diaphragmatic injury, liver injury, and brain damage, leading to brain death;

f.      Failing to secure Ms. Miranda's airway through use of the most experienced and proficient clinician available, leading to hypoxia and brain damage, leading to brain death;

g.      Failing to properly supervise and advocate for timely, proper, and adequate care through adequate presence of attending physicians from emergency medicine and trauma surgery during emergency department trauma evaluation; and

h.     Such other acts of negligence and/or malpractice as may be determined through discovery and/or other methods.

138.     Defendant Dr. Torres Cordero's gross negligence and reckless disregard for Ms. Miranda's wellbeing caused or contributed to her death.

WHEREFORE, Plaintiff Ary Assuncao, as Personal Representative of the Estate of Marlene Miranda, demands judgment against Defendant Ulises Torres Cordero, M.D. for punitive damages, as well as costs, interest and reasonable attorney's fees as well as such other relief as this Honorable Court deems just and proper.

## COUNT XVII: CONSCIOUS PAIN & SUFFERING
## ARY ASSUNCAO AS PERSONAL REPRESENTATIVE OF THE
## ESTATE OF MARLENE MIRANDA v. ULISES TORRES CORDERO, M.D.

139.     The Plaintiff repeats and re-alleges the allegations contained in Paragraphs 1 – 138 of this Complaint, and incorporates them herein by reference.

140.     During the course of Ms. Miranda's care from Defendant Dr. Torres Cordero and in the days prior to her death, Ms. Miranda was conscious, aware, and in pain and suffering.

141.     Ms. Miranda's conscious pain and suffering was made evident by her reports of severe pain and the level of pain medication she received.

142.     At all times relevant hereto, Ms. Miranda consciously suffered as a direct and proximate result of the negligent care rendered by Defendant Dr. Torres Cordero.

WHEREFORE, Plaintiff Ary Assuncao, as Personal Representative of the Estate of Marlene Miranda, demands judgment against Defendant Ulises Torres Cordero, M.D. in an amount that will adequately compensate her for his medical expenses, conscious pain and suffering, wrongful death, loss of reasonable expected income, services, protection, care, comfort,

society and companionship and costs, interest and reasonable attorney's fees as well as such other relief as this Honorable Court deems just and proper.

## COUNT XVIII: VICARIOUS LIABILITY/OSTENSIBLE AGENCY
## ARY ASSUNCAO AS PERSONAL REPRESENTATIVE OF THE
## ESTATE OF MARLENE MIRANDA v. LEONARD MORSE HOSPITAL

143.     The Plaintiff repeats and re-alleges the allegations contained in Paragraphs 1 – 142 of this Complaint and incorporates them herein by reference.

144.     At all times relevant hereto, Defendant Leonard Morse held itself out to the public as a hospital offering emergent care to patients such as Ms. Miranda.

145.     Ms. Miranda reasonably relied upon this representation and Defendant Leonard Morse's reputation for providing safe, efficient, and quality care rendered by qualified, competent personnel.

146.     At all times relevant hereto, Defendant Dr. Magnani was an agent, servant or employee of Defendant Leonard Morse and practiced under the policies, practices and procedures established by Defendant Leonard Morse.

147.     Defendant Leonard Morse is vicariously liable for the negligent acts or omissions of Defendant Dr. Magnani, its agent, servant, or employee.

148.     As a result of the negligent acts of Defendant Dr. Magnani, Defendant Leonard Morse's agent, servant, or employee, Ms. Miranda suffered deterioration in her condition and, ultimately, death.

WHEREFORE, the Plaintiff, Ary Assuncao, as Personal Representative of the Estate of Marlene Miranda, demands judgment against the Defendant Leonard Morse Hospital in an amount that will adequately compensate him for her pain and suffering, significant medical

expenses, disability from normal daily activities, great pain of body and mind, plus costs, interest and reasonable attorney's fees, and such other relief as this Court deems just and proper.

## COUNT XIX: VICARIOUS LIABILITY/OSTENSIBLE AGENCY
## ARY ASSUNCAO AS PERSONAL REPRESENTATIVE OF THE ESTATE OF
## MARLENE MIRANDA v. UMASS MEMORIAL MEDICAL CENTER, INC.

149.    The Plaintiff repeats and re-alleges the allegations contained in Paragraphs 1 ó 148 of this Complaint and incorporates them herein by reference.

150.    At all times relevant hereto, Defendant UMass Memorial held itself out to the public as a hospital offering emergent care to patients such as Ms. Miranda.

151.    Ms. Miranda reasonably relied upon this representation and Defendant UMass Memorial's reputation for providing safe, efficient, and quality care rendered by qualified, competent personnel.

152.    At all times relevant hereto, Defendant Dr. Ward was an agent, servant or employee of Defendant UMass Memorial and practiced under the policies, practices and procedures established by Defendant UMass Memorial.

153.    Defendant UMass Memorial is vicariously liable for the negligent acts or omissions of Defendant Dr. Ward, its agent, servant, or employee.

154.    As a result of the negligent acts of Defendant Dr. Ward, Defendant UMass Memorial's agent, servant, or employee, Ms. Miranda suffered deterioration in her condition and, ultimately, death.

155.    At all times relevant hereto, Defendant Dr. Haran was an agent, servant or employee of Defendant UMass Memorial and practiced under the policies, practices and procedures established by Defendant UMass Memorial.

156.    Defendant UMass Memorial is vicariously liable for the negligent acts or omissions of Defendant Dr. Haran, its agent, servant, or employee.

157.    As a result of the negligent acts of Defendant Dr. Haran, Defendant UMass Memorial's agent, servant, or employee, Ms. Miranda suffered deterioration in her condition and, ultimately, death.

158.    At all times relevant hereto, Defendant Dr. Torres Cordero was an agent, servant or employee of Defendant UMass Memorial and practiced under the policies, practices and procedures established by Defendant UMass Memorial.

159.    Defendant UMass Memorial is vicariously liable for the negligent acts or omissions of Defendant Dr. Torres Cordero, its agent, servant, or employee.

160.    As a result of the negligent acts of Defendant Dr. Torres Cordero, Defendant UMass Memorial's agent, servant, or employee, Ms. Miranda suffered deterioration in her condition and, ultimately, death.

WHEREFORE, the Plaintiff, Ary Assuncao, as Personal Representative of the Estate of Marlene Miranda, demands judgment against the Defendant UMass Memorial Medical Center, Inc. in an amount that will adequately compensate him for her pain and suffering, significant medical expenses, disability from normal daily activities, great pain of body and mind, plus costs, interest and reasonable attorney's fees, and such other relief as this Court deems just and proper.

## COUNT XX: PRE-MORTEM LOSS OF CONSORTIUM
## ARY ASSUNCAO, INDIVIDUALLY v. JANET MAGNANI, M.D.

161.    The Plaintiff repeats and re-alleges the allegations contained in Paragraphs 1 – 160 of this Complaint, and incorporates them herein by reference.

162.    As a result of Defendant Dr. Magnani's negligence, Mr. Assuncao was caused to sustain the pre-mortem loss of society, companionship, cooperation, aid, affection and consortium of his wife, Marlene Miranda.

WHEREFORE, Plaintiff Ary Assuncao, Individually, demands judgment against Defendant Janet Magnani, M.D. in an amount that will adequately compensate him for her medical expenses, conscious pain and suffering, wrongful death, loss of reasonable expected income, services, protection, care, comfort, society and companionship and costs, interest and reasonable attorney's fees as well as such other relief as this Honorable Court deems just and proper.

### COUNT XXI: PRE-MORTEM LOSS OF CONSORTIUM
### ARY ASSUNCAO, INDIVIDUALLY v. JEANINE WARD, M.D.

163.    The Plaintiff repeats and re-alleges the allegations contained in Paragraphs 1 - 162 of this Complaint, and incorporates them herein by reference.

164.    As a result of Defendant Dr. Ward's negligence, Mr. Assuncao was caused to sustain the pre-mortem loss of society, companionship, cooperation, aid, affection and consortium of his wife, Marlene Miranda.

WHEREFORE, Plaintiff Ary Assuncao, Individually, demands judgment against Defendant Jeanine Ward, M.D. in an amount that will adequately compensate him for her medical expenses, conscious pain and suffering, wrongful death, loss of reasonable expected income, services, protection, care, comfort, society and companionship and costs, interest and reasonable attorney's fees as well as such other relief as this Honorable Court deems just and proper.

### COUNT XXII: PRE-MORTEM LOSS OF CONSORTIUM
### ARY ASSUNCAO, INDIVIDUALLY v. JOHN P. HARAN, M.D.

165.    The Plaintiff repeats and re-alleges the allegations contained in Paragraphs 1 - 164 of this Complaint, and incorporates them herein by reference.

166.    As a result of Defendant Dr. Haran's negligence, Mr. Assuncao was caused to sustain the pre-mortem loss of society, companionship, cooperation, aid, affection and consortium of his wife, Marlene Miranda.

WHEREFORE, Plaintiff Ary Assuncao, Individually, demands judgment against Defendant John P. Haran, M.D. in an amount that will adequately compensate him for her medical expenses, conscious pain and suffering, wrongful death, loss of reasonable expected income, services, protection, care, comfort, society and companionship and costs, interest and reasonable attorney's fees as well as such other relief as this Honorable Court deems just and proper.

### COUNT XXIII: PRE-MORTEM LOSS OF CONSORTIUM
### ARY ASSUNCAO, INDIVIDUALLY v. ULISES TORRES CORDERO, M.D.

167.    The Plaintiff repeats and re-alleges the allegations contained in Paragraphs 1 – 166 of this Complaint, and incorporates them herein by reference.

168.    As a result of Defendant Dr. Torres Cordero's negligence, Mr. Assuncao was caused to sustain the pre-mortem loss of society, companionship, cooperation, aid, affection and consortium of his wife, Marlene Miranda.

WHEREFORE, Plaintiff Ary Assuncao, Individually, demands judgment against Defendant Ulises Torres Cordero, M.D. in an amount that will adequately compensate him for her medical expenses, conscious pain and suffering, wrongful death, loss of reasonable expected income, services, protection, care, comfort, society and companionship and costs, interest and reasonable attorney's fees as well as such other relief as this Honorable Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL COUNTS.**

Respectfully submitted,

ARY ASSUNCAO, Individually and as Personal
Representative of the
ESTATE OF MARLENE MIRANDA,
By his attorneys,

Date:  July 17, 2015

*/s/: Abigail Williams, Esquire*
Abigail R. Williams, Esquire
B.B.O. No.:  559245
Erin A. Atwater, Esquire
B.B.O. No.: 686774
Abigail Williams & Associates, LLC
446 Main Street, 9th Floor
Worcester, MA  01608
Tel: (508) 795-1955
Fax: (508) 795-1710
E-Mail:        awilliams@medical-law.com
                    eatwater@medical-law.com